UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                       REPORT AND RECOMMENDATION
                                       18-CR-6125 DGL/MJP

vs.

FELIPE CONFESOR ALMONTE-
POLANCO,

                        Defendant.

_____

## APPEARANCES

For the United States:                    Melissa M. Marangola, AUSA
                                            United States Attorney's Office
                                            100 State Street, Fifth Floor
                                            Rochester, NY 14614
                                          (585) 263-6760

For the Defendant:                      Avik K. Ganguly, Esq.
                                              Ganguly Brothers, PLLC
                                          2024 West Henrietta Road,
                                          Suite 3D
                                          Rochester, NY 14623
                                          (585) 219-8319

## INTRODUCTION

**Pedersen, M.J.** In a superseding indictment filed on July 30, 2019 (ECF No. 65), the Grand Jury charged Felipe Confesor Almonte-Polanco ("Almonte-Polanco" or "Defendant") with making a false statement in an application for a passport, making and using a false document, committing aggravated identity theft, and of being a felon in possession of ammunition.

The superseding indictment also seeks forfeiture of fifty rounds of Remington 9mm ammunition, should he be convicted of the charge of being a felon in possession of ammunition.

On April 12, 2019, Defendant's former counsel, Jon Getz, Esq., filed an omnibus motion seeking, *inter alia*, suppression of tangible items. In particular, he sought suppression of an identification card Almonte-Polanco produced in response to a request by Officer William Baker of the Rochester Police Department on July 23, 2018, when Officer Baker encountered Defendant and two others outside World Wide News on St. Paul Street in Rochester, New York. Defendant also seeks suppression of items seized from his person when Officer Baker arrested him on July 24, 2018, which included his wallet, a driver's license, and other documents. Finally, based on the alleged illegal searches and seizures by Officer Baker, Investigator Cynthia Muratore of the Rochester Police Department sought and obtained a search warrant from Monroe County Court Judge Sam L. Valleriani to search an apartment located at 113 Lyell Avenue, Rochester, New York. That search was conducted on July 28, 2018, and resulted in discovery of the ammunition, a cell phone, a scanner, white blank magnetic stripe cards, and other items.

On October 11, 2018, Defendant filed a *pro se* motion (ECF No. 24), to suppress evidence from a traffic stop on July 24, 2018, while Defendant was driving a Jetta Volkswagen.

The Honorable David G. Larimer, U.S. District Judge, referred the case to the Honorable Jonathan W. Feldman, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) & (B). Judge Feldman heard oral argument on the omnibus motion and the government's response on October 2, 2019. He issued a decision on all the issues raised in Defendant's omnibus motion except for the following: audibility hearing (concerning the body camera videos); *Franks* hearing request; suppression of the items seized during the searches of July 23 and 24; and suppression of the items seized during the search of the apartment at 113 Lyell Avenue. (Order, Oct. 23, 2019, ECF No. 83.)

On November 7, 2019, the case was referred to the undersigned. After review of the motion papers, the transcripts of oral argument, and *pro se* supplemental papers filed by Almonte-Polanco, I recommend that his motions to suppress the evidence and for an audibility hearing be denied.

## STANDARD OF LAW

The relevant portion of 28 U.S.C. § 636(b)(1)(A) and (B) provides that the undersigned may "conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion . . . to suppress evidence in a criminal case."

## DISCUSSION

### *Preliminary Matters*

For this Report and Recommendation, the Court has reviewed the following: Almonte-Polanco's omnibus motion (ECF No. 50); the government's response in opposition (ECF No. 51); Almonte-Polanco's "Motion to Suppress Evidence Seized During the House Search-II" (ECF No. 61)[1]; Almonte-Polanco's affidavit in support of a *Franks* hearing (ECF No. 68); Almonte-Polanco's letter to Judge Larimer (ECF No. 69); defense counsel's Supplemental Notice of Motion (ECF No. 76); the government's response in opposition to the defense's supplemental notice (ECF No. 79); body camera footage from Officer William Baker (00777_WB194020180723164257_002.MP4 in its entirety, and 00777_WB19402018072317229_003.MP4 from 16:00 through 20:00); Gov't's Suppl. Brief with Ex. A, Feb. 28, 2020 (ECF No. 93); Almonte-Polanco's affidavit dated September 3, 2019 (ECF No. 88) and the transcripts filed on September 9, 2019 (ECF No. 71; ECF No. 72; ECF No. 73; ECF No. 74; and ECF No. 75). Regarding the body camera footage, both sides agreed in Court that the recordings are admissible evidence.

### *Findings of Fact Regarding the July 23, 2018, Evidence*

The body camera footage from Officer Baker provides a real-time view of the events that transpired on July 23, 2018, while the officer was on a bicycle

---

[1] Although Defendant is represented by experienced and able counsel, he insists on filing additional papers, which his counsel has asked the Court to consider in making its decision on the pending motions.

traveling south on the east side of St. Paul Street in the vicinity of World Wide News. The recording begins with a time stamp of July 23, 2018, at 16:42:29. Officer Baker is bicycling past the Cook Iron Store on St. Paul Street, when he eventually reaches the area of the World Wide News parking lot across the street from an apartment block. Yellow painted pipes form a fence around portions of the parking lot. Sitting on the pipes are three males, side by side, and Officer Baker says to them, "What's up guys?" The men's responses are not clearly audible, and Officer Baker then asks, "How we doin' today?" He then makes a comment about the weather (it was lightly raining), and asks, "What you guys doing over here? You guys just hanging?"[2]

At this point in the recording, 16:43:15, the voice of a police dispatcher is heard (it is not clear whether the voice was audible to the men on the street, or only to Officer Baker). One of the three men on the railing (not Defendant) stood and starts to walk across St. Paul Street, and Officer Baker says to him, "You can hang for a second, man, you're good." The man then returns to the railing and sits next to Almonte-Polanco who is wearing blue jeans, a plain white short sleeve T-shirt, and a white hat with a black symbol resembling bird wings on it. Officer Baker then asks the three men, "You got your IDs on you?" At this point, 16:43:27, the dispatcher stated that a man at 125 St. Paul Street, across from the apartments, is selling cigarettes out of his car. The

---

[2] Officer Baker's statements are perfectly audible on the recordings. Those of the bystanders and Almonte-Polanco less so.

dispatcher then adds the police are looking for him and that he is related to a shooting incident and describes him as a black male with a white black hat. Officer Baker, now facing the three men, asks "Do you guys all got your IDs on you?" At that point, Almonte-Polanco hands the officer a card he took from his wallet, and Officer Baker says, "Thanks, man, I appreciate it," inspects the card and at the same time speaks into his radio microphone saying, "Yeah, 790, that's who I'm out with." The man sitting to Defendant's right, dressed in a black short sleeve T-shirt and black hat with a small white symbol on it, then hands a card to Officer Baker, who thanks him. The man dressed in black reports his name as Ridgeway, Junior, and then Officer Baker asks Defendant what his name is, and he responds, but his response is not audible. Officer Baker asks him to take off his hat and sunglasses, which Defendant does, briefly, then replaces them.

Referring to Almonte-Polanco's I.D. card, Officer Baker then comments, "Man, this thing is messed up," and Defendant responds, "I know, I gotta get a new one." Officer Baker then asks if it is the only I.D. he has, and Defendant responds, "Yea, as soon as they come in, back to college, I gotta get a new one. I had this for five years already." The third man did not have any I.D. and Defendant indicated to Officer Baker that the third man lived in the apartment building across the street.

Officer Baker and Defendant engaged in some conversation during which Almonte-Polanco complained that if there is going to be this much

trouble here, they won't hang out there anymore. Officer Baker responds saying that about an hour ago, someone threatened to shoot someone at the location where the men are and Officer Baker says, "So we're just kind of hitting this area, man, unfortunately." They engage in some more conversation and then Officer Baker says, "You guys are being cool, I appreciate that. It'll just be a minute. I'll just let you guys know, though, because I tell this to everybody, if you guys are lying about your names or anything like that . . . you could be charged with it." At this point in the recording, 16:45:34, a marked police car pulls into the parking lot behind the three men, who do not appear to notice it. Officer Baker then asks the man dressed in all black, "This is definitely you man?" and that man responds affirmatively, adding "for thirty-five years." Officer Baker then asks, "this is for sure you," holding up Almonte-Polanco's I.D. in front of him, and Defendant appears to respond in the affirmative (nodding his head). Almonte-Polanco then addresses a woman who is off camera, asking why she left him. She responds she had to go home, and they carry on a short conversation, while Officer Baker eventually turns to his right and she appears on camera (wearing a white dress with a belt, carrying a pink cane, black shoulder bag, and wearing a black hat), along with a uniformed police officer at 16:46:01. Officer Baker speaks quietly to the officer while Defendant is engaged in conversation with the woman, then Officer Baker leaves the sidewalk and sits inside the police car, evidently to make a phone call.

Officer Baker, at 16:46:46, says "Hey, so, he is showing me an MCC ID of Manual Soto Torres," and asks whether "we" confirmed whether he is really Felipe, to which a voice (evidently on a phone) says he is really Felipe. During the remainder of the video recording, Officer Baker makes several unsuccessful attempts to get a fingerprint identification of Defendant.

Investigator Cynthia Muratore's affidavit, dated July 27, 2018, in support of the search warrant for 113 Lyell Avenue, confirms that she arrested Defendant on July 23, 2018, for criminal impersonation and obstructing governmental administration. Muratore Aff. at 106 (*attached to* ECF No. 51-1 *as* Ex. B).[3] During her search incident to that arrest, she states she found a New York State driver's license photo I.D., a Visa card, and a Social Security card all in the name of Manuel Soto Torres, and as a result, charged Almonte-Polanco with possession of a forged instrument. *Id.*

### Legal Conclusions Regarding the July 23, 2018, Evidence

The Monroe County College identification card in the name of Manual Soto Torres that Defendant handed to Officer Baker is one item Almonte-Polanco seeks to suppress. In his supplemental motion (ECF No. 76, at 4), defense counsel describes the July 23 encounter as follows: "Rochester Police Officers approached the defendant and demanded identification. At the time the defendant was not engaged in any unlawful or suspicious behavior."

---

[3] The affidavit has page numbers on the bottom right corner of every page starting with page 100. The Court disagrees with defense counsel's position that the affidavit is not usable in adjudicating the initial encounter between Officer Baker and Defendant.

The Court disagrees with defense counsel's characterization of the encounter. Officer Baker approached the three individuals in a non-threatening manner and engaged in conversation during which he eventually asked if they had I.D., and two of the three handed him I.D. cards. As Officer Baker explained, about an hour prior to this interaction, there had been a report of a threatened shooting in that area.

The Second Circuit outlined the scope of permissible police-citizen contacts by stating in a 1995 decision:

> As our cases make clear, there are three levels of interaction between agents of the government and private citizens. *See id.* at 1008; *United States v. Hooper,* 935 F.2d 484, 490 (2d Cir.), *cert. denied,* 502 U.S. 1015 (1991). Consensual encounters require no justification so "'long as the police do not convey a message that compliance with their requests is required.'" *Glover,* 957 F.2d at 1008 (quoting *Florida v. Bostick,* 501 U.S. 429, 435 (1991)). Investigative detentions, the second category, require "reasonable suspicion" to believe that criminal activity has occurred or is about to occur. *Glover,* 957 F.2d at 1008. Arrests, requiring a showing of probable cause, comprise the third type of encounter between citizens and government agents. *See id.*

*United States v. Tehrani*, 49 F.3d 54, 58 (2d Cir. 1995). The question presented here is whether Officer Baker's act of approaching the three men and making an inquiry about their identification was a consensual encounter, which did not convey a message that compliance with his request was required. "Police officers enjoy 'the liberty (. . . possessed by every citizen) to address questions to other persons.'" *United States v. Mendenhall,* 446 U.S. 544, 553 (1980) (opinion of Stewart, J.) (quoting *Terry v. Ohio*, 392 U.S. 1, 32 (Harlan, J., concurring)." *United States v. Hooper*, 935 F.2d 484, 490 (2d Cir. 1991).

Nothing in the encounter on July 23 displayed "'the indicia of force or authority that typically earmarks a Fourth Amendment seizure." *Hooper*, 935 F.2d at 492 (quoting *United States v. Barrios-Moriera*, 872 F.2d 12, 15 (2d Cir. 1989), *cert. den. sub nom Barrios-Moriera v. United States*, 493 U.S. 953 (1989), *abrogated on other grounds by Horton v. California*, 496 U.S. 128, 130 (1990) (holding that "even though inadvertence is a characteristic of most legitimate 'plain-view' seizures, it is not a necessary condition.")). Officer Baker did not display a firearm, touch any of the individuals, or use a tone of voice or language indicating that compliance with his request was mandatory. Thus, the MCC I.D. card was not seized within the meaning of the Fourth Amendment and need not be suppressed.

Defense counsel posits that the "stop" by Officer Baker was pretextual. (ECF No. 50-1 at ¶ 35.) The Court disagrees that the officer stopped Defendant. Almonte-Polanco was already stopped, and the officer's encounter did not require him to stop Defendant to obtain his MCC I.D. Moreover, approximately a minute into Defendant's initial encounter with Officer Baker, and before Officer Baker obtained Defendant's MCC I.D. card identifying him as Manual Soto Torres, dispatch notified Officer Baker that the police were looking for an individual matching Defendant's description in connection with the illegal sale of cigarettes and a shooting incident. Officer Baker had a reasonable suspicion that criminal activity was afoot. Even before Officer Baker obtained Defendant's identification, he learned from an officer awareness flyer that

Defendant was really Felipe Almonte-Polanco. (Officer Awareness: Felipe Polanco-Almonte, *attached as Ex. A to Gov't's Suppl. Brief*, Feb. 28, 2020, ECF No. 93.) Thus, when Almonte-Polanco identified himself as Soto Torres, Officer Baker had at least a reasonable suspicion that Defendant was committing a crime.

The encounter between Officer Baker and Defendant continued for a lengthy period of time and it became clear after a time that Almonte-Polanco was not free to leave, and was eventually arrested. Defendant's arrest was supported by probable cause and Investigator Muratore search incident to that arrest produced further evidence of Almonte-Polanco's possession of documents, which she alleges are forged.

### Findings of Fact Regarding the July 24, 2018, Evidence

Defendant's counsel's affirmation in support of suppression (ECF No. 50-1, at ¶ 46), alleges that Officer Baker arrested Almonte-Polanco on July 24, 2018, without probable cause and searched his "personal belongings including his wallet and seized items, including but not limited to, a driver's license and other documents," which counsel alleged the government would use against Defendant. The government's response (ECF No. 51, at 11), discusses an arrest of July 24, 2018, which it states occurred while Defendant was driving a 2003 Jetta Volkswagen. The only item addressed by the government for the July 24 arrest is the cell phone, and no evidence from that cell phone is currently planned to be used in the government's case.

11

As for the New York State driver's license and other documents, the affidavit of Investigator Cynthia Muratore, dated July 27, 2018, shows that she arrested Defendant on July 23, 2018, for criminal impersonation and obstructing governmental administration. Muratore Aff. at 106 (*attached to* ECF No. 51-1 *as* Ex. B). During her search incident to that arrest, she claims she found a New York State driver's license photo I.D., a Visa card, and a Social Security card all in the name of Manuel Soto Torres, and as a result, charged Almonte-Polanco with possession of a forged instrument. (*Id.*) Her affidavit makes no mention of an arrest on July 24 by Officer Baker.

### Legal Conclusions Regarding the July 24, 2018, Evidence

Since the government has represented that no evidence resulting from the July 24, 2018, arrest is to be offered, there is no basis for Defendant's motion to suppress. Should that situation change, Defendant has already reserved the right to make additional motions.

### Findings of Fact Regarding the Search Warrant for 113 Lyell Avenue

The Court relies on the affidavit of Investigator Muratore dated July 27, 2018, which was the basis for Monroe County Court Judge Sam L. Valleriani's issuance of a search warrant at 11:29 P.M. on July 27, 2018. (Muratore Aff., *attached to* ECF No. 51-1 *as* Ex. B.)

The affidavit, and the search warrant, describe the property to be searched as 113 Lyell Avenue, Rear Entry, Up E/S Apartment, Rochester, New York, and described the building in detail. Search Warrant ¶ 2 (*attached to* ECF No. 51-1 *as* Ex. B); Muratore Aff. ¶ 2, at 101 (*attached to* ECF No. 51-1 *as*

Ex. B). It further identified in detail the property to be searched for and seized. (Search Warrant ¶3; Muratore Aff. ¶ 3, at 101.) The Search Warrant also identified the issuing court and judge.

Investigator Muratore's affidavit recited the information already provided above from Officer Baker's encounter with Defendant. (*Id*. at 106.) The affidavit informed Judge Valleriani that Defendant identified himself to Officer Baker as Manual Soto Torres by producing an MCC photo identification card with his photo on the card. It informed the judge that Investigator Muratore identified Defendant as Felipe Polanco-Almonte, first over the phone to Officer Baker, then in person when the officer brought Almonte-Polanco to the police headquarters. (*Id*.)[4] Investigator Muratore wrote that she was personally familiar with Defendant through an unrelated investigation in June in the vicinity of 125 St. Paul Street, Rochester. She further informed the judge that during a search incident to arrest, she discovered other identification

---

[4] In her affidavit, Investigator Muratore wrote "FELIPE POLANCO-ALMONTE." In this case, Defendant is charged as Felipe Confesor Almonte-Polanco. Defense counsel referred to him as "Mr. Almonte" during an appearance on July 27, 2018, Tr. at 4, ECF No. 72, and on August 13, 2018, Tr. at 3, ECF No. 73. The Court referred to him as "Mr. Polanco Almonte" during an appearance on August 27, 2018, Tr. at 4 & 5, ECF No. 74. Defendant does not raise any issue regarding the mix-up in his last names. *C.f. In re Kelly W.*, 95 Cal. App. 4th 468, 472, 115 Cal. Rptr. 2d 536, 538 (2002) (appellate court reversed juvenile's conviction for falsely identifying himself by giving only part of his hyphenated last name to police); *c.f. United States v. Yakobov*, 712 F.2d 20, 24 (2d Cir. 1983) (reversing conviction for firearms violations, writing "[t]he use instead of misspelled versions of both Yakobov's first and last names hardly suggests diligence, and the spelling of Yakobov's last name with an initial 'J' seems likely to have prevented the discovery of any license or application for Yakobov, if one existed."). Unlike the situation in *Yakobov*, there can be no confusion between "Torres" and "Almonte-Polanco," or "Polanco-Almonte."

cards in his wallet bearing the name Manual Soto Torres, including a New York State driver's license, a Merrick Bank Visa card, and a Social Security card. (*Id*.) She discussed a prior field information form from July 17 filed by Officer Baker in which he reported that Defendant identified himself as Manuel Soto Torres on that date. Her affidavit also stated, "at the time, Manual Soto Torres, said he was selling cigarettes illegally. He also gave his address as 113 Lyell Avenue, the address listed in the search warrant." (*Id*.) Investigator Muratore stated that "the physical identification of this male matched the identification of Felipe Polanco-Almonte, and not that [of] Manual Soto Torres." (*Id*. at 106–07.)

Regarding the identity Defendant was alleged to have used, Investigator Muratore stated that on April 12, 2016, a citizen informant, Rebecca Edwards ("Edwards"), described by the investigator as a victim of a domestic violence incident, named Manuel Soto Torres as the suspect, and stated that he used a "nick name" of Felipe Almonte-Polanco. (*Id*. at 107.) Investigator Muratore stated that the suspect was identified by Border Patrol as Felipe Polanco-Almonte. Ms. Edwards further told Investigator Muratore "that Felipe Polanco-Almonte uses numerous alias[es], sells drugs, and makes documents. She said he has a trunk full of documents including driver's licenses and fake I.D.s." (*Id*. at 107.)

The investigator additionally stated she verified that Manual Soto Torres "is a real person who lives in NYC." (*Id*.) She further identified him with

his date of birth, physical description, FBI number and Social Security number. Manual Soto Torres, she stated, was five feet six inches tall and weighed 135 pounds, had a light complexion with green eyes and tattoos. Almonte-Polanco is described as five feet nine inches tall, 200 pounds, with a dark complexion and brown eyes. (*Id.* at 107.)

Also in Investigator Muratore's affidavit is information about an apparent July 24, 2018, burglary at the apartment at issue here. On that date, she stated that Rochester Police Officers received a 911 call to respond to 113 Lyell Avenue for a man scaling the wall and entering an apartment on the second floor. The apartment searched was also located at 113 Lyell Avenue, on the second floor. The caller is described as the girlfriend of the apartment owner and reported that an unknown male entered the apartment while her boyfriend was in jail. Police identified the man in the apartment as Jorge Santiago of Rhode Island who told police that he was "told to go to the apartment." (*Id.* at 107.)

In connection with that apparent burglary, on July 25, 2018, Investigator Muratore listened to recorded phone calls from the jail and found one from Almonte-Polanco in which he "called his relative and asked him to call his friends." (*Id.* at 107.) Further, Defendant told the person called "to go to the black lady at 70 Saratoga and get his keys to the car and get everything. Don't let them go into the bedroom." (*Id.*) Defendant was in jail on July 24, 2018, and released after his arraignment.

***Legal Conclusions Regarding the Search Warrant for 113 Lyell Avenue***

A search warrant must "identify the person or property to be searched" and "identify any person or property to be searched . . . ." Fed. R. Crim. P. 41(e)(2)(A); N.Y. Crim. Pro. Law § 690.45(4) & (5). Under New York law, the warrant must also identify the issuing court. *People v. Gavazzi*, 20 N.Y.3d 907, 909 (2012). Information from an identified citizen informant is generally sufficient for probable cause, absent special circumstances suggesting a reason for a lack of trust. *United States v. Lucas*, 817 F. Supp. 2d 151, 159 (W.D.N.Y. 2010), *aff'd,* 462 F. App'x 48 (2d Cir. 2012). The information from Edwards, Defendant's ex-girlfriend, recited above, was properly relied upon by the issuing judge as it gave no indication of a basis for untrustworthiness. That information, combined with the additional details provided in the investigator's affidavit, provided probable cause to believe that Almonte-Polanco was creating forged documents and that evidence of that criminal activity would be found in his apartment at 113 Lyell Avenue.

**Franks *issue***

Defendant contends that he is entitled to a *Franks* hearing concerning the search warrant affidavit. In order to justify a hearing under *United States v. Franks*, 438 U.S. 154 (1978),

> the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable

statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks*, 438 U.S. at 171.

### Findings of Fact Regarding the Franks *Issue*

Defendant's counsel's supplemental motion contains only this allegation: "the warrant affidavit contains false and misleading information…" without elaboration.[5] ([ECF No. 76](#) ¶ 8.) Almonte-Polanco's affidavit ([ECF No. 68](#)), contains more detailed allegations. He states he "was not in possession of a NYS License forged, or any NYS forged Documents." (Almonte-Polanco Aff. ¶ 1, [ECF No. 68](#).) Investigator Muratore states in her affidavit in support of the search warrant: "I CHARGED HIM WITH CRIMINAL IMPERSONATION 2ND AND O.G.A. 2ND, FOR LYING ABOUT HIS NAME AND DATE OF BIRTH, TO AVOID THE PENALTY OF A ROCHESTER CITY COURT BENCH WARRANT IN THE NAME OF FELIPE POLANCO-ALMONTE." (Muratore Aff. at 106 *attached as Ex. A to* Suppl. Mot. to Suppress, [ECF No. 76-1](#).) She further states that she searched Defendant incident to arrest and found a

---

[5] At the oral argument before the undersigned on December 30, 2019, defense counsel clarified his position by stating that he no longer disputed Investigator Muratore's assertion that she charged Defendant, but did still dispute the information conveyed by the civilian informant, Edwards. However, defense counsel's concern with Edwards's veracity is not an issue for a *Franks* hearing. *See United States v. Marlar*, 828 F. Supp. 415, 417–18 (N.D. Miss. 1993), *dismissed,* 68 F.3d 464 (5th Cir. 1995) ("Marlar has made no showing that Taylor's representation of Lambert as a 'good citizen informant' was an untruth, much less a deliberate falsehood or a reckless disregard for the truth."). Other than Almonte-Polanco's denial of possession of false documents, Defendant has offered no proof that the citizen informant was conveying a falsehood to Investigator Muratore and that the investigator was aware the information was false, or recklessly disregarded its falsity.

"NYSDL PHOTO I.D. IN THE NAME OF MANUEL SOTO TORRES WITH THE DATE OF BIRTH OF 3/26/77," and a photograph of Almonte-Polanco. Although Defendant denies possessing forged documents, in her affidavit the investigator provided a sufficient basis to support probable cause to believe that Almonte-Polanco possessed a forged New York driver's license.

Defendant contends that "Officer Baker never charged [him] with Possession of forged Documents *as stated in Affidavit*." Almonte-Polanco Aff. ¶ 3, ECF No. 68 (emphasis added). However, Investigator Muratore's affidavit merely states that Officer Baker had stopped Defendant on a prior occasion, July 17, and filed a field information form stating that Almonte-Polanco had identified himself to Officer Baker as Manuel Soto Torres. Muratore Aff. at 106, ECF No. 76-1. Contrary to Almonte-Polanco's allegation, the affidavit does not state that Officer Baker charged Defendant with any crime.

Both Almonte-Polanco, in paragraph four of his affidavit, and defense counsel in paragraph five of his affidavit, contend that when Investigator Muratore stated that she charged Almonte-Polanco with criminal possession of a forged instrument in the second degree this was not true. Defense counsel states that Defendant was arraigned in Rochester City Court on or about July 23, 2018, on charges of criminal impersonation and obstructing governmental administration, not possession of a forged instrument. The affidavit does not indicate when Investigator Muratore charged Defendant with possession of a forged instrument, and simply because he was arraigned on July 23 on other

charges, also stated in her affidavit, does not mean the quoted language is untrue. The affidavit does not cleanly lay out a chronology of events with each identified by the date of occurrence. But, attached to the government's response is an accusatory instrument signed by Investigator Muratore and dated July 23, 2018, marked received by Rochester City Court on July 24, 2018, at 6:54 a.m., charging Defendant with criminal possession of a forged instrument in the second degree. (Gov't Resp. Ex. B., ECF No. 79.)

At oral argument before the undersigned on December 30, 2019, defense counsel clarified his position by stating that he no longer disputed Investigator Muratore's assertion that she charged Defendant, but did still dispute the information conveyed by the civilian informant, Edwards. (Tr. at 29, Apr. 7, 2020, ECF No. 97.)

### Legal Conclusions Regarding a *Franks* *Hearing*

Defendant has not met his burden to justify a *Franks* hearing. He has not presented any evidence that Investigator Muratore's affidavit contains a deliberate falsehood, or displays a reckless disregard for the truth. Defense counsel's concern with Edwards's veracity does not justify a *Franks* hearing. *See United States v. Marlar*, 828 F. Supp. 415, 417–18 (N.D. Miss. 1993), *dismissed,* 68 F.3d 464 (5th Cir. 1995) (Marlar has made no showing that Taylor's representation of Lambert as a 'good citizen informant' was an untruth, much less a deliberate falsehood or a reckless disregard for the truth."). Other than Almonte-Polanco's denial of possession of false documents, Defendant has offered no proof that the citizen informant was conveying a

falsehood to Investigator Muratore and that the investigator was aware the information was false, or recklessly disregarded its falsity.

### *Legal Conclusions Regarding the Existence of Probable Cause*

The defense also attacks Investigator Muratore's reliance on statements by Edwards, Defendant's girlfriend, that she made in a domestic violence crime report on April 12, 2016, and on June 15, 2018, directly to the investigator. (Muratore Aff. at 107.) According to Investigator Muratore, Edwards stated in the crime report that her attacker, Manual Soto Torres, had a "nick name" of Felipe Almonte-Polanco, and that Almonte-Polanco "uses numerous alias[es], sells drugs, and makes documents," and that he had "a trunk full of documents including driver's licenses and fake IDs." (*Id.*) Defense counsel argues that Edwards's statements were not corroborated, did not connect the activity to 113 Lyell Avenue, did not specify times or dates, or locations, and that the search warrant ultimately executed at 113 Lyell Avenue and Defendant's car trunk[6] did not reveal any forging equipment or drugs.

The totality of the circumstances supports probable cause for the search warrant. Investigator Muratore's affidavit revealed that Almonte-Polanco had previously identified his residence as 113 Lyell Avenue, and the information from a reliable, named citizen informant, Edwards, along with finding apparently false identification in Defendant's possession, and his phone call from the jail asking that no one be allowed into his bedroom, reasonably led

---

[6] Defense counsel assumes the reference was to a car trunk, or boot. The affidavit does not state that.

the issuing judge to determine that probable cause existed for a search of 113 Lyell Avenue for evidence of forging documents.

## CONCLUSION

Based on the foregoing, I recommend that Almonte-Polanco's motion (ECF No. 50) to suppress tangible evidence seized from him on July 23, 2018, and from his apartment pursuant to the July 28, 2018, search warrant, be denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS**[7] to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[8]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*,

---

[7] **NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**: The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Larimer.

[8] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).

*Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

      **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

      The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

      Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

DATED:    April 21, 2020
           Rochester, New York

                                  MARK W. PEDERSEN
                              United States Magistrate Judge